105 F.3d 665
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Antonio KEATON, Petitioner-Appellant,
v.
Charles D. MARSHALL, Respondents-Appellees.
 No. 95-55873.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 6, 1996.
Decided Jan. 6, 1997.
 
 1
 Before: FLETCHER, TASHIMA, Circuit Judges, and RESTANI,* United States Court of International Trade Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Petitioner-appellant Antonio Keaton ("Keaton") was convicted of first degree murder and sentenced to 25 years to life imprisonment following a guilty plea. He now appeals the district court's denial of his petition for writ of habeas corpus. Keaton contends that he was denied effective assistance of counsel when his attorney erroneously informed him that he would be eligible for parole within ten years and for work time and good time credit while in prison. Based on this advice, Keaton claims that he pled guilty to first degree murder in an unknowing and unintelligent manner because he was not fairly apprised of the consequences of his plea. Because we find that Keaton does not make a sufficient showing of prejudice, we affirm the district court.
 
 BACKGROUND
 
 4
 Keaton was charged with murdering Lawerence Mason on November 8, 1981. In addition, Keaton was charged with burglary and robbery, with a special circumstances allegation that the murder occurred during the commission of the burglary and robbery, within the meaning of section 190.2(a)(17) of the California Penal Code.[1] The special circumstances allegation subjected Keaton to a potential sentence of death or life imprisonment without possibility of parole. Cal.Penal Code § 190.2(a)(17), (b) (West 1988).
 
 
 5
 The prosecution offered to withdraw the special circumstances allegation and the burglary and robbery charges if Keaton pled guilty to murder. On April 7, 1983, Keaton entered a plea of guilty to first degree murder pursuant to section 187. In the course of evaluating and accepting the plea, defense counsel, Aaron Stovitz, engaged in the following discourse with Keaton:
 
 
 6
 MR. STOVITZ: I have told you that the present laws provide for 25 years to life for first degree murder; is that correct?
 
 
 7
 THE DEFENDANT: Yes.
 
 
 8
 MR. STOVITZ: I have also advised you that under the Penal Code Section 190.2[2] there is a provision that you are eligible for parole and that you can get credit for work time and for good time after you go away to any prison facility.
 
 
 9
 Do you understand that?
 
 
 10
 THE DEFENDANT: Yes.
 
 
 11
 (ER 7-8)[3] On May 10, 1983, Keaton was sentenced to 25 years to life and was given 996 days of presentence custody credit, including 332 days of work time and good time credit. (ER 14)
 
 
 12
 On August 26, 1993, Keaton filed a petition for writ of habeas corpus in the United States District Court for the Central District of California. The magistrate filed his report and recommendation and lodged his proposed judgment in this matter and subsequently, the petition was dismissed by the district court.
 
 JURISDICTION
 
 13
 The district court's jurisdiction derived from 28 U.S.C. § 2254 (1994). Following the district court's denial of his petition for writ of habeas corpus, Keaton filed a notice of appeal and the district court issued a certificate of probable cause. We have jurisdiction pursuant to 28 U.S.C. § 2253 (1994).[4]
 
 STANDARD OF REVIEW
 
 14
 We review a district court's denial of a petition for writ of habeas corpus de novo. Williams v. Calderon, 52 F.3d 1465, 1469 (9th Cir.1995), cert. denied, 116 S.Ct. 937 (1996). The district court's factual findings relevant to denial of the petition, however, are reviewed only for clear error. Bonin v. Calderon, 59 F.3d 815, 823 (9th Cir.1995), cert. denied, 116 S.Ct. 718 (1996).
 
 DISCUSSION
 
 15
 Keaton contends that he was denied effective assistance of counsel when his trial attorney advised him to plead guilty to first degree murder and erroneously informed him that he would be eligible for parole within ten years and for work time and good time credit while in prison. Keaton claims that this erroneous advice strongly influenced his decision to plead guilty.
 
 
 16
 A guilty plea must be a voluntary, knowing and intelligent act made with sufficient awareness of the relevant circumstances and likely consequences resulting from a waiver of constitutional rights. Brady v. United States, 397 U.S. 742, 748 (1970). A claim of ineffective assistance of counsel may be made to attack the voluntariness and validity of a guilty plea. Hill v. Lockhart, 474 U.S. 52, 56 (1985). Although there is no constitutional right to be informed of parole consequences before a voluntary plea is given, an attorney's erroneous advice about parole eligibility may constitute ineffective assistance. See id. at 56-57.
 
 
 17
 To prove ineffective assistance of counsel, a petitioner must show that counsel's representation fell below an objective standard of reasonableness, id. at 57 (quoting Strickland v. Washington, 466 U.S. 668, 687-88 (1984)), and demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," i.e., he would not have pled guilty. Id. (quoting Strickland, 466 U.S. at 694). As both must be proved, the court may reject Keaton's claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial. Strickland, 466 U.S. at 697. The Supreme Court has directed that if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. Id.
 
 
 18
 Keaton argues that the difference in parole eligibility dates between what he believed he was obtaining and what he actually obtained would have "strongly influenced" his plea decision. Appellant's Br. at 6. In exchange for his guilty plea, the prosecution agreed to drop the burglary and robbery charges and to strike the special circumstances allegation, reducing the maximum potential sentence from death[5] or life imprisonment without the possibility of parole to 25 years to life imprisonment with the possibility of parole. Keaton unconvincingly claims that the prosecution's agreement to forego the special circumstances allegation was "remarkably little" in exchange for his guilty plea. Id. The removal of the possibility that Keaton may be found guilty and sentenced to life imprisonment without the possibility of parole rather than a minimum sentence of 25 years to life with the possibility of parole, however, is a substantial reduction of the risk Keaton would have faced at trial.
 
 
 19
 Secondly, Keaton argues that because he did not personally kill the decedent, by waiving his right to a jury trial, he was foregoing "an inviting opportunity to seek leniency from a jury which, very likely, might have refused to impose murder and special circumstances verdicts through vicarious accomplice liability." Id. Keaton asserts that "[i]t was only because of the opportunity for a short period of incarceration that [he] denied himself the opportunity for jury leniency." Id.
 
 
 20
 Under current law, Keaton is eligible for good time and work time credit to reduce his sentence by up to one-third pursuant to section 2931[6] and would be eligible for parole after serving approximately 16 years and 8 months or 13 years and 11 months (taking into account Keaton's 996 days of presentence custody credit).[7] Keaton has made no specific allegation as to why he placed particular emphasis on the approximate date of his parole eligibility[8] in making his plea decision. Moreover, he has not adequately explained why he would risk a possible sentence of life imprisonment without possibility of parole if he had been advised that from the date of sentencing he would be eligible for parole after serving almost 14 years, instead of 10. See Hill, 474 U.S. at 60 (stating defendant "alleged no special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty"); Doganiere v. United States, 914 F.2d 165, 168 (9th Cir.1990) (citing Hill, 474 U.S. at 60 for identical proposition). Accordingly, Keaton has not made an adequate showing of prejudice.
 
 
 21
 The district court's denial of Keaton's petition for writ of habeas corpus is AFFIRMED.
 
 
 
 *
 Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 All further statutory references are to the California Penal Code, unless otherwise noted
 
 
 [2]
 Although Keaton's counsel incorrectly references section 190.2 (which details special circumstances for sentences of death or life imprisonment without the possibility of parole) rather than section 190 (which provides for eligibility for work time and good time credit), Keaton claims no particular prejudice arising from the mistaken citation alone. See Cal.Penal Code §§ 190, 190.2 (West 1988)
 
 
 [3]
 "ER" refers to Petitioner-Appellant's Excerpts of Record
 
 
 [4]
 We need not and do not reach the issue of whether the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which became effective on April 24, 1996, while this appeal was pending, applies to pending appeals. Since appellant cannot succeed under pre-AEDPA law, "a fortiori appellant could not meet a more demanding standard" under the AEDPA. Lowell v. Prunty, 91 F.3d 1358, 1359 (9th Cir.1996)
 
 
 [5]
 Although Keaton was subject to the death penalty under section 190.2 at the time of his plea, it appears from the transcript of the hearing that the maximum penalty sought by the prosecution was life imprisonment without the possibility of parole. (ER 8)
 
 
 [6]
 On its face, section 2931 applies only to prisoners sentenced to determinate terms. Cal.Penal Code § 2931 (West 1982). California courts, however, have applied such credits to prisoners, such as Keaton, who have been sentenced to indeterminate terms under section 1168(b). See, e.g., In re Dayan, 282 Cal.Rptr. 269, 270-71 (Ct.App.1991)
 
 
 [7]
 Shortly before Keaton pled guilty, section 2933 was enacted, which allows prisoners to receive one-half of their sentence credited for participation in a work program in lieu of section 2931 credits. See Cal.Penal Code § 2933 (West 1996). Although section 2933 on its face applies only to prisoners who have received determinate sentences, Keaton's trial counsel could have reasonably interpreted section 190(a) to mean that Keaton would be eligible to receive credits under section 2933. At the time of Keaton's plea, the California Department of Corrections had been giving prisoners serving indeterminate sentences credit under section 2933. See, e.g., In re Oluwa, 255 Cal.Rptr. 35, 37 (Ct.App.1989); In re Monigold, 253 Cal.Rptr. 120, 121 (Ct.App.1988). It was only after Keaton pled guilty that California Courts of Appeal found section 2933 did not apply to prisoners sentenced to indeterminate terms. Oluwa, 255 Cal.Rptr. at 39-40
 
 
 [8]
 Appellees claim that the statement allegedly made by Keaton's trial attorney, i.e., Keaton would be eligible for parole within ten years, is not in the record. We assume for sake of argument that such a statement was made, but we do not know from what date any such period would run or how the period was calculated. Any such calculation, however, likely would have been based, at least in part, on the circumstances described, supra, note 6